FILED

JUL 22 2014

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

|  |  |  |
|---|---|---|
| GARY B. WILLIAMS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:13CV276–HEH |
| | ) | |
| HAROLD CLARKE, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION
### (Granting Respondent's Motion to Dismiss 28 U.S.C. § 2254 Petition)

Gary B. Williams, a Virginia inmate proceeding *pro se* and *in forma pauperis*,

filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("§ 2254 Petition,"

ECF No. 7).  Respondent moves to dismiss the § 2254 Petition.  Williams has responded.

(ECF No. 19.)  The matter is ripe for disposition.

Williams argues entitlement to relief upon the following grounds:

Claim One    The state failed to prove that Williams was guilty of aggravated malicious wounding.

Claim Two    The state court lacked subject matter jurisdiction to enter an order of conviction or sentencing order.

Claim Three    "Biased Vindictive State Judge Orchestrated Petitioner's Conviction And Deprived Him of Right to Effective Criminal Appeal . . . ." (§ 2254 Pet. 9.)

Claim Four    Williams is actually innocent of the wounding in the commission of felony conviction.

Claim Five    Williams is actually innocent of the aggravated malicious wounding conviction.

Claim Six      Williams is actually innocent of all charges because the state
               prosecutor and the jail manufactured evidence of a crime.

Claim Seven    "Unlawfully Detained By State For Acts The State Lacked Subject
               Matter Jurisdiction Over." (*Id.* at 30.)

As explained below, Williams's claims are defaulted and barred from review here.

## I.   PROCEDURAL HISTORY

### A.   Conviction

A grand jury in the Circuit Court of the City of Suffolk, Virginia ("Circuit Court")

charged Williams with malicious wounding of a law enforcement officer, aggravated

malicious wounding, and shooting, stabbing, cutting or wounding during the commission

of a felony.  Williams chose to represent himself with stand-by counsel during his jury

trial in the Circuit Court.  A jury found Williams guilty of both aggravated malicious

wounding and shooting, stabbing, cutting or wounding during the commission of a

felony.  *See Commonwealth v. Williams*, No. CR10000659–00, at 1–3, (Va. Cir. Ct. July

12, 2011); *Commonwealth v. Williams*, No. CR10000660–00, at 1–3 (Va. Cir. Ct. July

12, 2011).  The Court granted Williams's Motion to Strike the evidence and acquitted

Williams of malicious wounding of a law enforcement officer.  *See Commonwealth v.*

*Williams*, No. CR10000658–00, at 1–2 (Va. Cir. Ct. July 12, 2011).  The Circuit Court

imposed a forty-five-year sentence.  *Commonwealth v. Williams*, No. CR10000660–00, at

1–3 (Va. Cir. Ct. Oct. 20, 2011); *see Commonwealth v. Williams*, No. CR10000659–00,

at 1–3 (Va. Cir. Ct. Oct. 20, 2011).

During trial, the Commonwealth's evidence demonstrated that on March 2, 2010,

Williams struck correctional officer Russell G. Moulton, Jr. multiple times with a piece

of metal as Moulton conducted evening rounds in the Western Tidewater Regional Jail. (July 7, 2011 Tr. 185–8, 231; July 8, 2011 Tr. 502.)  Williams obtained the metal piece from the stairs two months prior to the assault. (July 8, 2011 Tr. 503–04.)  Williams hid the metal piece in his jumpsuit, and as Moulton walked by, Williams struck him on the head, across his neck, on his right shoulder and his finger, causing him to "bleed[ ] pretty bad." (July 7, 2011 Tr. 188, 202, 230–32; *see also* July 8, 2011 Tr. 502–04.)  As a result of his injuries, Moulton went to the hospital where he had a CAT scan, an MRI, x-rays, and had six staples placed in the cut on his head. (July 7, 2011 Tr. 187–88.)  Moulton remained in the hospital for a total of three hours. (July 7, 2011 Tr. 203.)  At the time of trial, more than a year and four months after the assault, Moulton had permanent scars remaining on his neck, shoulder, and head that he showed to the jury. (July 7, 2011 Tr. 188–89, 204, 211.)  The jury observed photographs of Moulton's "whole side being black and blue from the injuries," as well as the scars on his face and shoulders. (July 7, 2011 Tr. 191.)

Moulton explained that when he asked Williams why he assaulted him, Williams "mumbled" that Moulton "had taken his legal mail," "put an inmate in a cell to die," and that "he didn't mean [him] any harm." (July 7, 2011 Tr. 193.)  Moulton testified that he had never had problems with Williams prior to the assault. (July 7, 2011 Tr. 200–01.)[1]

---

[1] Williams was interviewed by an investigator the day following the incident. The prosecution played a recording of that interview for the jury. Williams indicated that he began thinking about using the piece of metal on a guard back in October 2009. (July 7, 2011 Tr. 233.) He explained that he "knew that would be the only way I was going to get into court" because he "ha[d] some files that need to be revealed to some judge, any judge." (July 7, 2011 Tr. 233.) Williams then provided a lengthy and fantastical account about corrupt Virginia police officers and his retention of certain police reports to prove criminal acts (July 7, 2011 Tr. 234–51) and

Williams admitted to investigators that he hid the metal object in his jumpsuit, and then hit Moulton with "full force" causing Moulton to fall down, and subsequently hit Moulton at least three additional times while Moulton was on the ground. (July 7, 2011 Tr. 262–65.) Williams stated that he believed himself justified in assaulting or killing Moulton because Moulton had blocked his mail. (July 7, 2011 Tr. 268.)

Williams testified in his own defense, and fully agreed that he planned the attack, found the piece of metal two months prior and hid it, and that he hit Moulton several times with the piece of metal. (July 8, 2011 Tr. 502–04.) Williams testified that he assaulted Moulton with the metal object because he believed Moulton interfered with his mail and because he simply desired "to catch a charge, [and] go to court . . . [and] get in front of my federal judge." (July 8, 2011 Tr. 474, 498, 502.)

**B.    Direct Appeal**

Williams, by counsel, appealed.  Counsel argued that the Circuit Court erred in denying the motion to strike the evidence of aggravated malicious wounding because insufficient evidence existed to show malice or permanent disfigurement.   Petition for Appeal at 3, *Williams v. Commonwealth*, No. 2172–11–1 (Va. Ct. App. filed Mar. 6, 2012). The Court of Appeals of Virginia denied Williams's petition for appeal, finding his claim defaulted under Rule 5A:18 of the Rules of the Supreme Court of Virginia

---

claimed that Moulton blocked his mail and endangered Williams's family. (July 7, 2011 Tr. 250–52, 266, 271.) Williams admitted that he decided to "[c]atch a charge and go to court," and the charge "had to be a felony" so it would not be dropped by the Commonwealth. (July 7, 2011 Tr. 254.) Williams decided that he would commit assault with a deadly weapon. (July 7, 2011 Tr. 255.) During the defense case, Williams testified with consistent information. (*See* July 8, 2011 Tr. 498–500.)

because he failed to properly preserve the issue for appeal. *Williams v. Commonwealth*, No. 2172–11–1, at 1–3 (Va. Ct. App. May 10, 2012).

Williams, by counsel, filed a petition for appeal with the Supreme Court of Virginia. In that petition, Williams argued that the Court of Appeals of Virginia erred by not applying the ends of justice exception under Rule 5A:18 of the Rules of the Supreme Court of Virginia to review the insufficiency of the evidence on the merits. Petition for Appeal at 3, *Williams v. Commonwealth*, No. 120970 (Va. filed June 12, 2012). The Supreme Court of Virginia refused the petition for appeal. *Williams v. Commonwealth*, No. 120970, at 1 (Va. Oct. 4, 2012).

### C.    Williams's Prior 28 U.S.C. § 2254 Petition

On October 21, 2011, Williams filed a 28 U.S.C. § 2254 petition in this Court. By Memorandum Opinion and Order entered December 27, 2012, the Court dismissed the petition without prejudice so Williams could exhaust his remedies in state court. *Williams v. Smith*, No. 3:11CV709–HEH, 2012 WL 6725618, at *1, 3 (E.D. Va. Dec. 27, 2012).

### D.    State Habeas

On March 8, 2013, Williams filed a petition for a writ of habeas corpus with the Supreme Court of Virginia. Petition for Writ of Habeas Corpus 1, *Williams v. Dir. of the Dep't of Corr.*, No. 130415 (Va. filed Mar. 8, 2013). In his state habeas petition, Williams raised claims similar to Claims Two through Seven in the present § 2254 Petition. By Order entered May 1, 2013, the Supreme Court of Virginia found that Williams defaulted his claims under the rule in *Slayton v. Parrigan*, 205 S.E.2d 680, 682

(Va. 1974) because Williams failed to raise these claims on direct appeal. *Williams v. Dir. of the Dep't of Corr.*, No. 130415, at 1 (Va. May 1, 2013).

## II.   EXHAUSTION AND PROCEDURAL DEFAULT

### A.   Applicable Law

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner must first have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).  State exhaustion "'is rooted in considerations of federal-state comity,'" and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 & n. 10 (1973)).  The purpose of exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects.  First, a petitioner must utilize all available state remedies before he can apply for federal habeas relief.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844–48 (1999).  As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate "'opportunity'" to address the constitutional claims advanced on federal habeas. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513

U.S. 364, 365-66 (1995)). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* Fair presentation demands that a petitioner present "'both the operative facts and the controlling legal principles'" to the state court. *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. *Mallory v. Smith*, 27 F.3d 991, 994, 995 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal habeas petitioner also procedurally defaults claims when he or she "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*, 501 U.S. at 735 n.1).[2] The burden of pleading and proving that a claim is procedurally defaulted rests with the state.

---

[2] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)).

*Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citations omitted).

Absent a showing of cause and prejudice or a fundamental miscarriage of justice due to

his actual innocence, this Court cannot review the merits of a defaulted claim. *See Harris*

*v. Reed*, 489 U.S. 255, 262 (1989).

### B.    Williams Has Defaulted His Claims

The Court of Appeals of Virginia[3] found Claim One barred from review under

Rule 5A:18 of the Rules of the Supreme Court of Virginia because Williams failed to

properly preserve the question of the sufficiency of the evidence of aggravated malicious

wounding for appeal. *Williams v. Commonwealth*, No. 2172–11–1, at 1–3 (Va. Ct. App.

May 10, 2012) (explaining that Williams failed to renew his motion to strike and failed to

move to set aside the verdict at the close of Williams's evidence).  Rule 5A:18 is an

adequate and independent state law basis for procedural default. *See Weeks v. Angelone*,

176 F.3d 249, 270 (4th Cir. 1999).  Thus, Williams procedurally defaulted Claim One.

The Supreme Court of Virginia found Claims Two through Seven barred from

review because Williams failed to raise the claims at trial and on direct appeal. *Williams*

*v. Dir. of the Dep't of Corr.*, No. 130415, at 1 (Va. May 1, 2013) (citing *Slayton v.*

*Parrigan*, 205 S.E.2d 680, 682 (Va. 1974)).  *Slayton* constitutes an adequate and

independent state procedural rule when so applied. *See Mu'Min v. Pruett*, 125 F.3d 192,

196–97 (4th Cir. 1997).  Thus, Williams procedurally defaulted Claims Two through

Seven.

---

[3] Because the Supreme Court of Virginia summarily rejected Williams's petition, this Court looks to the decisions of the Court of Appeals of Virginia in addressing the issue of procedural default with respect to Claim One. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

### C.    Williams's Arguments to Excuse His Default

This Court may review Williams's procedurally defaulted claims if he establishes

either cause and prejudice or actual innocence. *Breard*, 134 F.3d at 620.  "Cause" in this

context means an "objective factor external to the defense" sufficient to thwart an actual

attempt to correctly file the claims in state court. *McNeill v. Polk*, 476 F.3d 206, 214 (4th

Cir. 2007) (citation omitted) (internal quotation marks omitted).  The court need not

consider the issue of prejudice in the absence of cause. *See Kornahrens v. Evatt*, 66 F.3d

1350, 1359 (4th Cir. 1995) (citation omitted).   Williams provides a rambling "Exceptions

to Procedural Default Rule" ("Exceptions" ECF No. 19–1) that outlines his arguments for

cause and prejudice or a fundamental miscarriage of justice to excuse his default.  As

explained below, Williams fails to establish either.

### 1.    Cause and Prejudice

#### a.    Removal

Williams provides two arguments for "cause" and "prejudice."  Williams first

claims that he lacked the ability to litigate his state criminal case and his state collateral

proceedings because at the time he had removed the case to federal court.  Williams

represented himself with stand-by counsel at the time he chose to remove his case to

federal court.  While he argues that his decision to remove the case prevented him from

litigating his state claims, Williams's personal actions in removing the case were not an

"objective factor external to the defense." *McNeill*, 476 F.3d at 214 (citation omitted)

(internal quotation marks omitted).  Moreover, Williams fails to explain how his

frivolous attempts to remove his criminal case to federal court prevented him from

raising any claims in state court.[4]  Thus, he fails to demonstrate cause to excuse his

default based on this line of argument.

### b.    Lack of Legal Materials

Williams also argues that a lack of access to legal materials caused the default of

his claims.  The record dispels this argument.  Williams contends that "[i]mmediately

after [his] trial on July 11, 2011" the institution where he was incarcerated

"seized . . . [his] trial notes, pens, paper, discovery materials, and work product . . . ."

(Exceptions 3.)   Williams claims the institution only returned the materials on December

7, 2011.  (*Id.* at 6.)  Williams argues that despite having stand-by counsel and appellate

counsel during this time period, "the state trial court prevented [him] from filing motions

to set-aside verdict/judgment, written objections, and from personally pursuing effective

direct appeal."  (*Id.* at 3.)  As explained below, Williams's purported lack of access to his

materials fails to serve as cause for the default of his claims.

First, Williams represented himself *pro se* during the trial proceedings, and he

personally could have preserved his claims during trial, but failed to do so.  Williams

likely defaulted his claims in advance of purportedly being denied his legal materials.

Second, to the extent Williams somehow defaulted his claims by not filing a post-trial

motion, Williams represented himself during trial and could have relied on his

recollection of the proceedings to file any post-trial motions or objections.  Moreover,

---

[4] Williams "sought to remove his then-pending state criminal charges for malicious wounding in the Circuit Court for the City of Suffolk." *Williams v. Suffolk Circuit Ct.*, Nos. 3:12CV55–HEH, 3:12CV78–HEH, 2012 WL 6099090, at *1 (E.D. Va. Dec. 7, 2012).  The Court found that Williams "failed to demonstrate that the requisite jurisdiction exists to allow him to remove his criminal cases to this Court" and remanded the matter to the Circuit Court. *Id.* at *3.

Williams had the same counsel as stand-by counsel at trial, during sentencing on October 14, 2011, and on appeal.  Williams could have obtained any court documents he needed from counsel or asked counsel for assistance during the time he lacked legal materials.[5]

To the extent Williams suggests that a lack of legal materials prevented him from raising his claims on appeal, Williams clearly had access to legal materials and possessed the ability to submit documents to the court during this period.  Moreover, Williams had counsel on appeal.  Williams, by counsel, noted his appeal on October 27, 2011.  Williams, without counsel, filed his first § 2254 petition in this Court on October 21, 2011, clearly demonstrating that, during this period, Williams had the ability to pursue his legal rights despite his allegations to the contrary.  Moreover, Williams alleges that the institution returned his materials to him on December 7, 2011.  Williams's brief was not due to the Court of Appeals of Virginia until March 3, 2012.  *See Williams v. Commonwealth*, No. 2172–11–1 (Va. Ct. App. Feb. 17, 2012).  Thus, Williams had three months after his materials were returned in which to file a supplemental *pro se* brief.  Williams fails to demonstrate that any purported lack of access to papers and legal materials caused him to default his claims.

---

[5] Williams's stubborn unwillingness to help himself and his lack of diligence is apparent from the record.  For example, during sentencing, Williams argued that he lacked the ability to subpoena witnesses because his legal records with the witnesses' addresses had been taken from him.  (Oct. 14, 2011 Tr. 4.)  The Circuit Court asked Williams if he had sought counsel's assistance in attempting to find the addresses and Williams responded that he had not.  (Oct. 14, 2011 Tr. 6.)  Instead he blamed the Circuit Court for failing to assist Williams.

### c.    Ineffective Assistance of Appellate Counsel

Williams never suggests in his submissions that the ineffective assistance of appellate counsel serves as the cause for the default of his claims.[6]  Nevertheless, even if Williams argued that appellate counsel caused the default of his claims because he failed to raise them on appeal, such an assertion lacks merit.

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689).  The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

For example, in Claim One, Williams argues that the state failed to prove Williams was guilty of aggravated malicious wounding.  Williams himself, not appellate counsel, caused the default of this claim when he failed to move to strike the evidence at

---

[6] At most, Williams faults the Circuit Court for forcing him to have counsel on appeal.

the conclusion of trial. Additionally, in Claims Two, Three, and Seven, Williams argues that that the state court lacked jurisdiction to convict or detain him and the judge was "[b]iased" and "[v]indictive" and denied him an appeal. (§ 2254 Pet. 9.) Williams fails to demonstrate any deficiency of counsel because counsel reasonably eschewed raising on appeal that the Circuit Court exhibited bias or lacked jurisdiction. Williams also fails to demonstrate any prejudice in light of the overwhelming evidence of his guilt of wounding in the commission of a felony and aggravated malicious wounding.

In Claims Four through Six, Williams suggests that he is actually innocent of wounding in the commission of a felony and aggravated malicious wounding and the Commonwealth manufactured evidence. Contrary to his assertions, overwhelming evidence existed of Williams's guilt, thus he can establish no prejudice from counsel's failure to raise actual innocence on appeal. Williams admitted to forming a plan to commit assault with a deadly weapon on an officer two months prior to the attack simply to obtain a criminal charge to get into court. Williams believed himself justified in the assault because the officer blocked his legal mail. Williams admitted that he hid the metal object in his jumpsuit and that he purposely hit Moulton several times with "full force," knocking him to the ground, and then continued to hit him. (July 7, 2011 Tr. 262.) Moulton testified that he had permanent scars from the attack that were visible to the jury.

Because Williams fails to establish ineffective assistance of appellate counsel, counsel cannot serve as the cause for his default of his claims.

## 2.    Miscarriage of Justice/Actual Innocence

The "fundamental miscarriage of justice exception" permits review of otherwise procedurally barred claims only in those "extraordinary instances" where the petitioner "makes a proper showing of actual innocence." *Turner v. Jabe*, 58 F.3d 924, 931–32 (4th Cir. 1995) (citations omitted) (internal quotation marks omitted).  However, "actual innocence" means factual innocence and not just legal insufficiency. *See Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citations omitted) (internal quotation marks omitted) ("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence.")  For an actual innocence claim, a petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  If a petitioner meets the burden of producing new, truly reliable evidence of his innocence, the Court then considers "'all the evidence,'" *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327–28), and determines "whether 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010) (quoting *Schlup*, 513 U.S. at 327–28).  "The Court need not proceed to this second step of the inquiry unless the petitioner first supports his or her claim with evidence of the requisite quality." *Hill v. Johnson*, No. 3:09cv659, 2010 WL 5476755, at *5 (E.D. Va. Dec. 30, 2010) (citing *Weeks v. Bowersox*, 119 F.3d 1342, 1352–53 (8th Cir. 1997); *Feaster v. Beshears*, 56 F.Supp.2d 600, 610 (D. Md.1999)).

Williams argues that he is actually innocent of the charge of aggravated malicious wounding.[7] Williams contends that a jury improperly found him guilty of this charge because the victim's injuries were not sufficiently severe and permanent for the aggravated charge. (Exceptions 3.) In support of his claim, Williams alleges that the victim's hospital records show that the victim suffered less severe injuries than he testified to at trial and that photographs introduced at trial depicted. (*See id.* at 13–17.) Williams fails to support his claim with evidence of the requisite quality to support a claim of actual innocence because the victim's medical records are not "*new* reliable evidence." *Schlup*, 513 U.S. at 324 (emphasis added). Instead, the record establishes that Williams had been provided the medical records prior to trial and could have used them to impeach the victim's testimony.

During sentencing, Williams indicated that he had the victim's medical records during trial, but the records were taken from him after trial concluded. (Oct. 14, 2011 Tr. 7–8.) When the Circuit Court inquired about Williams's need for the medical records at the sentencing, Williams responded: "They were not submitted during trial but they were submitted as to discovery . . . I was going to submit my medical records here today because . . . the medical records showed that [the victim] sustained no injuries . . . . He had a scratch on the neck and there was pictures of gaping holes by the time the trial got here." (Oct. 14, 2011 Tr. 7–8.) The Circuit Court explained to Williams, "we're not

---

[7] Prior to any actual innocence argument, Williams simply states that a "miscarriage of justice" should excuse the default of his claims. In support of this argument, Williams simply repeats defaulted Claims One through Five. Williams fails to demonstrate any miscarriage of justice based on his restatement of his claims.

addressing the issue of guilt or innocence" because "the jury's already made a ruling."

(Oct. 14, 2011 Tr. 8.)  Because Williams clearly had the victim's medical records in

advance of trial, the medical records fail to qualify as "new reliable evidence" sufficient

to support a claim of actual innocence.[8]  Accordingly, Williams's claims are defaulted

and barred from review here.

## V.   Conclusion

Respondents' Motion to Dismiss (ECF No. 12) will be granted.  The § 2254

Petition will be denied.  The action will be dismissed.

An appeal may not be taken from the final order in a § 2255 proceeding unless a

judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1)(B).  A COA

will not issue unless a prisoner makes "a substantial showing of the denial of a

constitutional right."  28 U.S.C. § 2253(c)(2).  This requirement is satisfied only when

---

[8] Williams fails to allege why he failed to introduce the records at trial.  From the record, it appears that Williams failed to obtain certified copies of the records so did not use them at trial.  (See Oct. 14, 2011 Tr. 8.)  Even if Williams somehow demonstrated that records were "new reliable evidence" not available at trial, Williams cannot establish that if the records were admitted at trial "'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'"  *Sharpe*, 593 F.3d at 377 (quoting *Schlup*, 513 U.S. at 327–28).

Aggravated malicious wounding requires severe injury of the victim and "permanent and significant physical impairment."  Va. Code Ann. § 18.2–51.2A.  Williams argues that the victim's medical records would show that the victim walked into the hospital, was only in the hospital for two hours before his release, and his injuries lacked requisite severity based on Williams's personal, non-medical assessment of the records.  (Exceptions 13–17.)  The jury heard the victim's testimony about the extent of his injuries, his need to have a CAT scan, x-rays, and staples placed in his head, and viewed photographs depicting his injuries.  (July 7, 2011 Tr. 186–92, 203.)  The jury also observed the clearly visible scars that remained sixteen months after Williams's attack on the victim.  During cross-examination, the victim agreed that he only stayed in the hospital for around three hours, had no surgery, and needed no crutches or wheelchair to leave the hospital.  (July 7, 2011 Tr. 203.)  Thus, in light of the evidence presented at trial of the victim's injuries, no reasonable juror would find that the victim failed to suffer sufficiently serious injuries for aggravated malicious wounding, but for the introduction of the victim's medical records.

"reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  Williams fails to meet this standard.  Accordingly, the Court will deny a certificate of appealability.

An appropriate Final Order will accompany this Memorandum Opinion.

                                                         /s/
                                            HENRY E. HUDSON
Date: Jul 21, 2014           UNITED STATES DISTRICT JUDGE
Richmond, Virginia